# Steve Zissou & Associates

## Attorneys at Law

42-40 Bell Boulevard, Suite 302
Bayside, New York 11361

Office   (718) 279-4500                                          Email: stevezissou@verizon.net
Facsimile (718) 281-0850

**By ECF**

February 5, 2011

Honorable Brian M. Cogan
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *USA v. Kourkounakis*
        09-cr-306 (BMC)

Dear Judge Cogan:

This letter is submitted on behalf of my client, George Kourkounakis, who is scheduled for sentencing on February 18, 2011. Our objections to the presentence report and sentence recommendations are described inb detail below.

## Background

The charges in this case started with an investigation by the Internal Revenue Service (IRS) of various businesses that were cashing relatively large checks. The investigation eventually led federal agents to the offices of "Asbestos and Lead Removal Environmental Corporation" (ALR). George Kourkounakis greeted agents when they appeared at the corporate offices of ALR in Whitestone, New York, and immediately began to cooperate. Over the course of the next year, Kourkounakis truthfully explained the nature of his business and the reasons why he had cashed the checks. In short, Kourkounakis explained that the business he was in was so competitive that he would be unable to compete for work if he did not pay many of his workers in cash.

It is important to note at the outset that this was hardly a crime of rapacity. George Kourkounakis did not cash checks and pocket the proceeds. Nor did he use the money to fuel a decadent lifestyle. He did not pay himself a large salary nor did he squander the cash on frivolous activities. Instead, the cash was used to maintain his business and to avoid having to leave his many employees without jobs and income. And the modest assets that he did acquire over the years, two investment properties in Queens, NY, have now been sold and the proceeds set aside to satisfy his obligation to make restitution in this case.

Following his efforts to cooperate with investigators, on August 14, 2009, the defendant pleaded guilty to a single-count information. The guilty plea was entered pursuant to a written  agreement with the government. Although the information charges only that he evaded personal income tax owed for the tax year 2007, as apart of the agreement, Kourkounakis also acknowledged the failure to collect and remit the payroll taxes that ALR owed as a result of the check cashing scheme.

## I.      Advisory offense level

As part of the plea agreement, the defendant stipulated that the tax loss for guideline purposes was at least $400,000.00.  This loss amount results in a base offense level of 18 {2T4.1(g)}. With 3 levels off for acceptance of responsibility, the total offense level is 15.  In criminal history category I, the advisory sentence range is 18 - 24 months.

The defendant respectfully requests that the Court adopt this advisory guideline calculation and reject the alternative calculation proposed in the presentence report (PSR).

### A.      Other objections

The defendant also objects to the descriptions used in paragraphs 23-27 of the PSR. This section of the report contains factual allegations that are substantially inaccurate *and* based upon sources of information that had not been previously provided to counsel.  In the absence of such information, the defense is unable to adequately respond. The probation department declined counsel's request for disclosure of the underlying documents in the absence of a court order. This Court issued such an order on February 4, 2011 and it has been forwarded to USPO Langone.

In any event, until such time as the probation department complies with the order, we respectfully request that these paragraphs not be considered in imposing sentence in this case.

## II.    Personal History

George Kourkounakis is a 54 year old man born in Greece. As described in the PSR, he is the youngest of seven siblings.  Most of them reside in New Jersey.  Regretfully, perhaps due to embarrassment, with the exception of his sister, Maria, Mr. Kourkounakis has not informed his family of his current plight.  Accordingly, among the letters submitted on his behalf, none were authored by family members.

Mr. Kourkounakis also has two children. A daughter, Jeanine Kourkounakis (age 33), resides in New Jersey. They remain close but, again, Mr. Kourkounakis has chosen not to involve her in this matter. He also has a son, Anthony Kourkounakis (age 22). Unfortunately, as described in the PSR, the two men are, as of now, estranged.

As is also described in the PSR, Mr. Kourkounakis' left school at a young age, before completing High School, because he needed to work to help support his family. As described below, George Kourkounakis is no stranger to hard work. Indeed, it is precisely is what defines who he is.

## III.   Employment and post offense efforts to comply with the tax law.

Following a brief stint in the United States Marines in 1974, Kourkounakis entered the construction industry and he has remained there, in one capacity or another, since that time. The focus of his business, asbestos removal, is a highly competitive and high volume business. In fact, as explained above, the primary reason that he became involved in the current offense is that many of his competitors were doing the same thing. And they also, in turn, paid their workers in cash. And without this competitive edge, Kourkounakis would not have been able to remain in business, or at least it seemed so to him at the time.

But this was hardly the only reason. Until recently, Mr. Kourkounakis had relied on a book keeper, Phil Bernstein, for all of his accounting work. Following the commencement of his active cooperation in this case back in 2008, Mr. Kourkounakis realized that the old way of doing business was not acceptable and he began to take a closer look at his books and records. He realized that in order to stay in business, he would need to revamp the entire structure of his organization. And he realized that he needed to replace Mr. Bernstein with a more competent professional.

Terminating his relationship with Phil Bernstein was not an easy decision for Mr. Kourkounakis to make. Because, as the attached character letters demonstrate, whatever else may be said about him, George Kourkounakis is extremely loyal to the people who work for him. Many of whom have worked with him for the last two decades. The sentiments expressed in these letters makes it clear the kind of man that Kourkounakis really is and also why he stayed with Bernstein for so long. For example, in his letter to the Court, Gustavo Lopez, Project Manager, of ALR Environmental wrote as follows:

> I supervise four groups of guys, and I would like to speak on behalf of all the guys that work for George Kourkounakis, who is the president of the company.

There were times when he got jobs just at its cost, just because he was thinking of us the workers, and because he made a commitment to keeps all of his guys working and the business going.

I wish that I can write down all the good things that there are about him, but there is not enough time for you, the Honorable Brian M. Cogan & Jurors to read it. I will however mention a few of his good qualities: he is down to earth; simple; generous; workaholic; and he never ever demonstrated any greediness in his part. Mr. Kourkounakis for all of us can be a true friend a very understanding individual who will take of his shirt to help a needy person.

His loyalty to his employees and to Mr. Bernstein was, at least in part, one of the reasons why Kourkounakis started cashing checks.  He had long left the handling of the books and records to others, including Bernstein.  Kourkounakis also understood that Bernstein was experiencing personal problems and was reluctant to replace him.  Nevertheless, Kourkounakis understood that he had to find a way to bring ALR into compliance with the tax laws so he brought in a new accountant, Roy Berg.

Berg was horrified at what he found when he started to examine the the books and records. From unopened correspondence from federal and local tax collectors to incomprehensible ledgers.  Of course, Berg worked with Bernstein for a time so that he could help Berg develop an understand the nature of the business records.  During this time, Bernstein admitted to Berg that he had not served ALR well and attributed his failures to personal problems that included his spouse, who had a long term illness of some kind.

According to Berg, it took him about a year to reorganize ALR's books and records.  Berg advised counsel that ALR is current on all payments and is also making great strides at paying off assessments from prior years.  In fact, he reports, every single full time and part time employee receives a "W2."  And for the 2009 fiscal year alone, 129 employees were "on the books" at ALR.  And, significantly, not a single employee, to his knowledge, was/is paid in cash.  Mr. Berg advised that ALR now remits between $30,000.00 and 50,000.00, *per month,* in federal and state payroll taxes and that this figure is in addition to the back taxes that are still owed.

Berg now spends about one full day a week at ALR.  He says that Kourkounakis is a very hard worker and treats the folks who work for him generously.  And although he anticipates that the business has now stabilized and will likely survive, he is very clear on his belief that his view is wholly depend on one significant factor - the continued presence of George Kourkounakis. On this point Berg was certain - the business *will not* and cannot survive without him.

Mr. Berg will be present at sentencing in the event that the Court has any questions or concerns.

In short, Kourkounakis has always been a hard working and industrious man.  His work week begins on Sunday and ends on Saturday. This has continued over the years since he was visited by federal agents in this case and, he hopes, the Court will fashion a sentence that will allow him to continue to do so in the years ahead.

### A.     Restitution

As the Court will recall, there has been a delay in these proceeding to allow Mr. Kourkounakis to sell off many of the assets in which he has an interest. As mentioned above, these assets include two properties in Queens, NY.  After paying off the outstanding mortgages, he has accumulated approximately $300,000.00 that is now sitting in his lawyer's escrow account and is available to pay restitution in this case.

Under all of the circumstances, we ask that the court consider the entry of an order of restitution that is no greater than this amount. Any larger amount will be unreasonable, unrealistic and interfere with the defendant's ability to maintain his business. In turn, this will deprive the federal government of the revenue derived from the employment tax payments that are currently being remitted by ALR on a monthly basis as explained above. And, of course, the loss of employment by the approximately 120 full and part-time employees who have jobs and pay taxes will deprive the government of their own income tax payments. In addition, the local economy will also suffer the loss of the related economic activity generated by this many employees.

### IV.   The inadequacy of the presentence report

The PSR's evaluation of the appropriate sentence for Mr. Kourkounakis is premised solely upon a Guidelines analysis. In addition, the PSR fails to adequately consider Mr. Kourkounakis's particular circumstances as they relate to the factors enumerated in § 3553(a). As such, the PSR does not conform with sentencing practice augured  by the Supreme Court's decision in *United*

*States v. Booker*, 543 U.S. 220 (2005). See also  *United States v. Crosby*, 397 F.3d 103, 113 (2nd Cir. 2005).

In fashioning a recommendation based on the Guidelines alone, the PSR fails to perform the entirely appropriate and indispensable analysis under the approved post-*Booker* procedure in which the Guidelines are merely advisory, and constitute only one step in a  more comprehensive and diverse process. Nor does the PSR make any attempt to evaluate Mr. Kourkounakis's sentence under the standard mandated by statute: that it be "sufficient but not greater than necessary" to comply with the statutorily enumerated purposes of sentencing. See 18  U.S.C. § 3553(a); see also *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 578, 169 L.Ed.2d 481 (2007) (stating that 18 U.S.C. § 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of  sentencing . . .").

In fact, the PSR fails entirely to provide any analysis of the critical and requisite factors enumerated in 18 U.S.C. § 3553(a) other than the Guidelines, and fails to acknowledge – other than in a perfunctory manner – the Supreme Court's decision in *Booker*, and the changes in  federal sentencing *Booker* has mandated. In relying solely on the Guidelines, the PSR in effect  improperly reimposes a mandatory Guidelines system in place of the now advisory framework, contravenes *Booker*, and commits a de facto Sixth Amendment violation of the type *Booker* specifically and explicitly proscribed.  See also *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007)., (noting that one procedural error which can render a sentence unreasonable is "treating the Guidelines as mandatory.").

1.     **Section 3553(a) Requires a Sentence "Sufficient But Not Greater Than Necessary" to Accomplish the Stated Purposes of Sentencing**

As a threshold matter, since the Guidelines are now advisory, they no longer determine the sentence. Instead, the focal point is the instruction in the introductory paragraph of §3553(a),  referred to as the "parsimony clause," which directs that "the court shall impose a sentence  sufficient, but not greater than necessary,  to comply with the purposes set forth in paragraph (2)  of this subsection." 18 U.S.C. § 3553(a); see also *Kimbrough*, 522 U.S. 85, 128  S. Ct. at 570, 575 (2007).  *Gall* outlined how District Courts should consider both the advisory Guidelines and  §3553(a). See United States v. Cutler, 520 F.3d 136, 155 (2nd Cir. 2008). First, "'a district court  should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'" Id. (quoting *Gall*, 128 S.Ct. at 596 (citation omitted)).

However, the Guidelines are "not the only consideration." *Gall*, 128 S.Ct. at 596. In addition, sentencing courts "may not presume that the Guidelines range is reasonable." Id. at 596-97 (quoted in *United States v. Jones*, 531 F.3d 163, 170 (2nd Cir. 2008). "After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 128 S.Ct. at 596. As the Second Circuit has recognized, "the Supreme Court has clearly signaled that district courts enjoy considerable discretion in identifying the grounds that can justify a non-Guidelines sentence." *Jones*, 531 F.3d at 172.[1]

As noted, 18 U.S.C. § 3553(a) requires that a sentence be "sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2)." Subsection 2, in turn, enumerates the following purposes:

(2)     the need for the sentence imposed –
  (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B)     to afford adequate deterrence to criminal conduct;
  (C)     to protect the public from further crimes of the defendant; and,
  (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner [18 U.S.C. § 3553(a)(2)].

The Guidelines (as advisory) do not occupy any superior position among the seven factors listed in § 3553(a) that a court must consider in imposing sentence. Indeed, § 3553(a) does not provide any hierarchy, and if the order in which they appear is any indication, the Guidelines and the attendant policy statements – only two of the seven criteria – rank but fourth. And, of course, the advisory range that is applicable to Mr. Kourkounakis is itself driven by a single factor — the amount of the loss. This one factor alone then, accounts for 90% of the minimum guideline range.

---

[1] While the Supreme Court's ruling in *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007), established that a within-Guidelines sentence can be presumptively reasonable, id. at 2462-63, that presumption is restricted to appellate review and "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." Id. at 2465 (citing *Booker*, 543 U.S. at 259-60).

**2.      The Court can impose a sentence below the guideline range because such a sentence is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S. C. § 3553(a)**

Mr. Kourkounakis's personal history includes characteristics that support this Court sentencing him to a non-Guidelines sentence that is sufficient but not greater than necessary to comply with  § 3553(a)'s purposes. Within § 3553(a), subsection(1) provides that this Court should consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Although Mr. Kourkounakis pleaded guilty to tax evasion, his history and characteristics demonstrate that he is deserving of a non-Guidelines sentence instead of one within the advisory guideline range.

**V.      Factors supporting a below guideline sentence**

**A.      Cooperation in the absence of §5K1.1 motion**

As described above, George Kourkounakis cooperated with federal agents when he was first approached in this case. His willingness to do so assisted agents in significant ways including helping agents develop a full understanding of the case and who else, if anyone, was involved.  After *Booker* and *Rita*, it is clear that a Court can take into consideration a defendant's cooperation when imposing a sentence.

There is no question that Kourkounakis made every effort to cooperate in this case and, from the moment agents first contacted him, provided truthful information to the government.  Furthermore, his willingness to cooperate along with his extraordinary efforts to bring his business into compliance with the law reflects a reduced likelihood of recidivism and is a beneficial part of his or her history and character supporting a non-guideline sentence under § 3553(a)(2)(C), even if the absence of § 5K motion. See *United States v. Fernandez*, 443 F.3d 19 (2nd Cir. 2006) (a judge must consider "the history and characteristics of the defendant" and should consider that a defendant made efforts to cooperate, even if those efforts did not yield a government motion for a departure); *United States v. Lazenby*, 439 F.3d 928, 933-34 (8th  Cir. 2006)(noting that booker made the prosecution's determination of the cooperation factor less controlling, and holding that district court failed to take Booker's change into account); *United States v. Ochoa- Ramos*, 2008 WL 2062341, (E.D.Wis. 2008)(noting the ability to consider cooperation with the government as evidence of defendant's character under §3553(a) beyond a reduction under §3E1.1, even in the absence of a §5K motion from the prosecution).

### B.    Prior good deeds

As described in the letter from an employee, Gustavo Lopez, and accountant, Roy Berg, Kourkounakis has always treated the people who worked for him generously.  This history is richly detailed in the character letters that are attached to this memorandum.  In her letter, another employee, Evelyn Zambrano, describes both Mr. Kourkounakis' compassion and the crucial role that he playes in the life of her family:

> [s]ince I have known Mr. Kourkounakis, he have shown lots of compassion & support to my health situations and also to the death of my Mother and sister that had happen three (3) years apart of each other.
>
> Mr. Kourkounakis have also shown morale support to my well being and without his understanding, in which he could have not done he has paid me without any expectations and I appreciate him for that.
>
> Without him and his business there would be a lot of unemployed people that won't be able to support their families.
>
> I hope that you can understand my concern, and that you will be lenient with him, because we need him to keep his business running and his support for us to survive.

This theme, compassionate treatment of his employees and the clear understanding that without George Kourkounakis, the company would be unable to survive, runs through all of the letters.  In her letter, George's secretary, Victoria Batistic, a single mother of a 5 year old daughter, writes that:

> I've had the pleasure to know George, for fifteen years, and the opportunity to work for him in the past six. I am sure you might read a lot about his character, yet no words can describe Mr. Kourkotmakis better than meeting him in person. He is a kind, loving, caring, and respectful friend; a sufficient, leading, patient, grateful employer, but most of all, he is a unique person difficult to find in today's society.
>
> There have been times where I needed a friend, and George was there; times where I needed a job and his

generosity provided aid in my needs. As you may or may not know, I am a mother of a 5 year-old girl. Working for George as his secretary, I have been able to take care of my daughter for all these years.

During my pregnancy, he was generous to help me with the expenses while not working, and kind and understanding to provide me with all the time necessary to recover from the pregnancy.

Furthermore, looking at the present economy, I believe there is no argument that finding employment is quite challenging. With that being said, should Mr. Kourkounakis be found guilty, not only a lot of people will be -unemployed, yet the first of them all should be me. I understand that this may be a self-centered opinion, yet life is already challenging. Being an unemployed, single mother will be hellish. Therefore, please keep in mind not only Mr. Kourkounakis, but the lives of others that he is currently helping, and his employees.

Other letters attached to this submission express similar views. Each of the people will be available at sentence should the Court wish to hear from them directly.

**C.    Post-offense rehabilitation/reformation of business and efforts to make restitution.**

Giving no weight whatsoever to the efforts that Mr. Kourkounakis has made to correct his mistakes and bring his business into full compliance with the law, as the PSR in this case does, ignores the mandates of 3553(a). Post-offense rehabilitation, as exists in this case, has been recognized as an appropriate mitigating circumstance both before and after *Booker*: See *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008) (rejecting career offender range in a drug case, stressing, among other things, defendant's particularly striking impression as a changed man who renounced his former ways and renewed commitment to religion and family);. *United States v. Bradstreet*, 207 F.3d 76 (1st Cir. 2000) (departure at re-sentencing in securities fraud case properly based on post-offense rehabilitation); *United States v. Maier*, 975 F. 2d 944, 945 (2nd Cir.1992) (affirming departure where defendant's "efforts toward rehabilitation followed an uneven course).

In the years since *Booker* changed the legal landscape, other Courts have recognized post arrest rehabilitation as an important sentencing factor: See *United States v. Jones*, 216 F. App. 189 (3rd Cir. 2007) (departure granted for overstated criminal history prior to Booker and on remand, court imposed further reduction based on post-sentencing rehabilitation); *United States v. Shy*, 538 F.3d 933 (8th Cir. 2008) (defendant's post-offense rehabilitation, including her contributions to society through her "extraordinary work with persons with disabilities" justified three years probation for possessing pseudoephedrine knowing it would be used to make methamphetamine, despite guideline range of 37 - 46 months); *United States v. McFarlin*, 535 F.3d 808 (8th Cir. 2008) (three years probation imposed for conspiracy to distribute cocaine rather than 60 month guideline term, based on 54 year old defendant's extraordinary post-arrest rehabilitation, including his installation as a preacher, and serious health problems); *United States v. Green*, 152 F.3d 1202 (9th Cir. 1998) (post offense and post-sentencing rehabilitative efforts shown by exemplary conduct in prison warranted eleven level downward departure to 30 days); *United States. v. Kim*, 364 F.3d 1235 (11th Cir. 2004) (defendants' conduct demonstrated sincere remorse and acceptance of responsibility by liquidating 75% of their life savings and voluntarily undertaking enormous debt in order to pay $280,000 restitution after pleading guilty to defrauding the U.S., and was extraordinary enough to remove case from heartland and justify downward departure from 24 months to probation and home detention).

District judges, too, have been quick to embrace the notion that post arrest rehabilitation is an appropriate consideration. See *United States v. Samuels, 08 Cr. 08 (RWS)*, (S.D.N.Y. 2009) (time served imposed rather than guideline range of 70-87 for young defendant who stopped selling and using crack on her own initiative two months before her arrest, and who pursued GED, took up typing, had no write ups and led a trusted cleaning crew allowed access to virtually all parts of correctional facility); *United States v. Hawkins*, 380 F. Supp. 2d 143 (E.D.N.Y. 2005) (probation granted in insurance fraud case, rather than guideline range of 12-18 months, despite the fact defendant engage in further criminal activity in the course of rehabilitation because "the Guidelines are no longer a straightjacket binding courts to artificially created and cruel paradoxes of sentencing, by insisting not only on rehabilitation, but on extraordinary rehabilitation"); *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. 2005) (career offender range of 262 months too great; client will be 48 when he emerges from prison. The goal of rehabilitation "cannot be served if a defendant can look forward to nothing beyond imprisonment. Hope is the necessary condition of mankind . . . A judge should be hesitant before sentencing so severely that he destroys all hope and takes away all possibility of useful life. . . .").

**D.    A prison term would have an unduly harsh effect on his employees and their families.**

As the letters of support that are attached to this memorandum make clear, Mr. Kourkounakis's plays a crucial role in the lives of his employees. This includes the more than 100 full and part-time employee that worked at ALR over the last two years. *Booker* and *Rita* free courts to consider these factors as part of their analysis under § 3553(a).

The loss of so many jobs at any time is hardly insignificant. In these especially difficult economic times it is even more difficult to contemplate. Even at a time when the sentencing guidelines were considered mandatory, such collateral impact was considered a proper sentencing consideration. *Unites States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995). Clearly then, the impact on so many people is a §3553(a) factor that the Court can and should consider in this case.

## CONCLUSION

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.

*Gall*, 128 S. Ct. at 598 (2007), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996).

In *Gall, Kimbrough* and *Booker*, the Supreme Court has made it clear over the past several years that while judges must consider the Guidelines, the Guidelines are only advisory. However, in making an individual assessment of the appropriate sentence to impose, the district court must contemplate, in addition to the Guidelines, the factors laid out in 18 United States Code § 3553(a). *Gall*, 128 S. Ct. at 596. The "overarching" command of § 3553(a) is the Parsimony Clause, which "instruct[s] district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 128 S. Ct. at 563 (quoting *Gall*, 128 S. Ct. at 600).

After considering both the Guidelines and Mr. Kourkounakis's individual circumstances, the Court should conclude that a term of imprisonment not only would be "greater than necessary" to accomplish the goals of sentencing, but also could undermine those goals by halting, or otherwise interfering with Mr.

Kourkounakis's significant progress toward post arrest rehabilitation. While Mr. Kourkounakis's offense was certainly serious, there is no evidence that Mr. Kourkounakis is a danger to the public and, therefore, imprisonment is thus unnecessary to fulfill the purposes enumerated in § 3553(a)(2)(C). Moreover, incarceration is not necessary here to afford adequate deterrence to criminal conduct, since Mr. Kourkounakis has already spent more than two years bringing his business into compliance with the law. This is ample evidence that a prison sentence is unnecessary to deter him from any further criminal conduct. See § 3553(a)(2)(B).

Furthermore, by providing truthful assistance to the government in the prosecution of this case, and his extraordinary efforts to bring his business into compliance with the law has demonstrated his complete repudiation of his prior criminal conduct.

Finally, as the letters attached to this memorandum attest, the Court should also take into consideration the fact that he plays a crucial role in the life of his employees. And although it is hardly surprising for an employee to say something positive about an employer, the letters to the Court in this case reveal much about the extraordinary man that George Kourkounakis is and the unique and supportive role that he plays in their lives.

In any event, all of these factors, when taken together, support the conclusion that a sentence of probation is "sufficient but not greater then necessary" to accomplish the goals of sentencing.

Thank you very much for your consideration in this matter.

Sincerely yours,

*Steve Zissou*

Steve Zissou

cc: Michael Yaeger (by ecf), USPO Lisa Langone (by email)

# EXHIBITS

Honorable Brian M. Cogan
United States District – Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

January 28, 2011

Dear Honorable Brian M. Cogan:

Honorable Cogan my name is Gustavo Lopez, Project Manager, of ALR Environmental
Corp. I supervise four groups of guys, and I would like to speak on behalf of all the guys
that work for George Kourkounakis, who is the president of the company.

Mr. Kourkounakis has committed mistakes, but who doesn't. We are all human and
mistakes do happen. Some of his mistakes were made to help others, and he did them
without even thinking. Mr. Kourkounakis has since change his ways and has tried to
make 100% turnaround to make improvements in whatever errors he has made.

There were times when he got jobs just at its cost, just because he was thinking of us the
workers, and because he made a commitment to keeps all of his guys working and the
business going.

I wish that I can write down all the good things that there are about him, but there is not
enough time for you, the Honorable Brian M. Cogan & Jurors to read it.  I will however
mention a few of his good qualities: he is down to earth; simple; generous; workaholic;
and he never ever demonstrated any greediness in his part. Mr. Kourkounakis for all of us
can be a true friend a very understanding individual who will take of his shirt to help a
needy person.

Please Honorable Brian M. Cogan and Jurors I hope that you can understand our
concerns and that you have mercy and be kind to this great man.

Sincerely,

Attachment

Honorable Brian M. Cogan
United States District – Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

January 20, 2011

Dear Honorable Brian M. Cogan:

Honorable Cogan since I have known Mr. Kourkournakis, he have shown lots of
compassion & support to my health situations and also to the death of my Mother and
sister that had happen three (3) years apart of each other.

Mr. Kourkounakis have also shown morale support to my well being and without his
understanding, in which he could have not done he has paid me without any expectations
and I appreciate him for that.

Without him and his business there would be a lot of unemployed people that won't be
able to support their families.

I hope that you can understand my concern, and that you will be lenient with him,
because we need him to keep his business running and his support for us to survive.

Should there be anything else that I can assist you with, please feel free to call me.

Sincerely,

Evelyn D. Zambrano
(718) 308-6828

62 Nelson St., 3rd fl.
Brooklyn, NY 11231

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201


Dear Honorable Brian M. Cogan. I, Julio
Lopez have known George Kourkounakis
since 1990. Thank God I met him, he is
a good person with a good heart. He always
pay me on time and keep me busy, he is
a smart & caring person. When I separated
from my wife he gave me some good advice,
and was sad for the nightmare that I
was going through He cares about his workers
We always have a christmas party payed by
him together as a family.
Thanks to George I have been able to support
my family.
  Honorable Brian M. Cogan, please be considered
to him. If something happen to him I would
get hurt & a lot of people depends on
him. A lot of people will lose the jobs
if something happens to him. Thank you
for reading this letter. I hope that gives
you an idea of the good person that
is George for me & a lot of us.
  Thank you.           Julio Lopez
My Phone # is (201) 726-3103

January 26, 2011

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

This letter is in regards to the case of George Kourkounakis. I've had the pleasure to know George, for fifteen years, and the opportunity to work for him in the past six. I am sure you might read a lot about his character, yet no words can describe Mr. Kourkounakis better than meeting him in person. He is a kind, loving, caring, and respectful friend; a sufficient, leading, patient, grateful employer, but most of all, he is a unique person difficult to find in today's society.

There have been times where I needed a friend, and George was there; times where I needed a job and his generosity provided aid in my needs. As you may or may not know, I am a mother of a 5 year-old girl. Working for George as his secretary, I have been able to take care of my daughter for all these years. During my pregnancy, he was generous to help me with the expenses while not working, and kind and understanding to provide me with all the time necessary to recover from the pregnancy.

Furthermore, looking at the present economy, I believe there is no argument that finding employment is quite challenging. With that being said, should Mr. Kourkounakis be found guilty, not only a lot of people will be unemployed, yet the first of them all should be me. I understand that this may be a self-centered opinion, yet life is already challenging. Being an unemployed, single mother will be hellish. Therefore, please keep in mind not only Mr. Kourkounakis, but the lives of others that he is currently helping, and his employees.

In conclusion, I appreciate the time you have taken to read my letter, and hope of your consideration.  Should you have any questions or concerns, please do not hesitate to contact me at any time!

Best regards,

Victoria Batistic
84-17 25th Avenue
Jackson Heights, NY 11370
(917) 468-8454

Case 1:09-cr-00306-BMC   Document 18   Filed 02/05/11   Page 19 of 22 PageID #: 60

# Joy Klideris
### 25-49 48th street
### Astoria, NY 11103

January 21, 2011

Dear Your Honor,

With regards to George Kourkounakis, I have known George for almost fifteen years. In the time that I know George, I know him as a hard working, loving and caring person for his friends, family and community.

George has always strived to be helpful to other people, whether family or friends, whenever the opportunity arises. He always tries to lend a helping hand to all who are close around him, whether they are family, friends, employees, or colleagues.

Sincerely,

Joy Klideris

January 25 2011

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooksly, New York 11201

I would like to share with you
in this letter how great of a human being
George is, even though his qualities
are beyond words.

George is a kind hearted individual,
who helps everyone he can, and am sure everyone
he has ever encountered will agree with
me. I know George since 2000, He actually
gave me my first job as an asbestos Supervisor.
Even though I had worked in the field he
gave me the opportunity to demonstrate
the capacity I could have leading a team of
workers where I was the only female. Thanks
to his belief in me and his references I was
able to work with many different companies
througout New York city, but always going back
to the first company who believed in me and
my abilities.
I will also like to share with you
about the friend I found in George.
He's always been concerned with my
fimncial issues, because even though the
Asbestos field is a good paying job sometimes
jobs are hard to find. But I could say
that thanks to George during those hard times

George always made sure my family and I had money with out ever asking for something in return or taking it from my check.

George is a man like few. Never have I encountered someone in my life with the qualities that he possesses. I personally admire the person he is, he's a family man and a loving father. He will lend you a hand weather he meet you today or he's known you his entire life. Thats just the type of individual George is.

After all these years of experiencing first hand how good of a person George is we decided to take our friendship to another level and now we have been dating for 7 months. I would like for you to take my testimony about George not as a letter from a girlfriend, but as a person who has experienced and seen George do carefree.

If you may need to contact me. Please contact me at the following address and phone number. I will gladly cooperate in anything. THANK YOU!

Sincerely,

Kenia Santana

(347) 266-2223
1060 Macombs Road Apt 3g
Bronx, New York 10453
Kenia Santana

January 24, 2011

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

To Whom It May Concern,

I, Hitesh Gandhi, have known George Kourkounakis for fifteen (15) years. For all this time, Mr. Kourkounakis has been a professional associate, but also a good friend to me. We have done business together in the past, and he had constantly been doing a great job, and also provided payments on time. In addition, Mr. Kourkounakis is a polite, generous, and good hearted man. Knowing him, I can confidently say that he is a good person, and I could recommend him as such described, anywhere.

Furthermore, I would like to thank you for taking the time to read and acknowledge my letter. Should you have any further questions, please do not hesitate to contact me at any time.

Sincerely,

*Hitesh Gandhi*
294 12th Street
Wheeling, IL 60090
Phone: (347) 517-6669
Fax: (888) 528-4949